IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH J. LOSS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25 CV 11261 |
| | ) | |
| STONEX GROUP, INC., a Delaware corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# VERIFIED AMENDED COMPLAINT AT LAW

Plaintiff, JOSEPH J. LOSS, JR., by and through LAW FIRM OF DAVID G. SIGALE, P.C., and for his Verified Amended Complaint against the Defendant, STONEX GROUP, INC., a Delaware corporation, states and alleges and follows:

## COUNT I – WRONGFUL TERMINATION

## INTRODUCTION

1. This lawsuit is an action for StoneX's wrongful termination of Plaintiff Joseph J. Loss, Jr. ("Loss"), which was in violation of public policy and Illinois law.

2. All relevant occurrences and transactions occurred in the City of Chicago, County of Cook, State of Illinois.

## PARTIES

3. Loss is a resident of Chicago, Cook County, Illinois. Loss was employed by StoneX as a Quantitative Developer at its offices at 230 South LaSalle Street, Suite 10-500, in Cook County, from November 4, 2022, to February 1, 2024.

4. At all relevant times, Loss also possessed a concealed carry license ("CCL") from the State of Illinois pursuant to the Illinois Firearm Concealed Carry Act, 430 ILCS 66/1, *et seq.* ("FCCA"), and a FOID card pursuant to the Illinois Firearm Owners Identification Act ("FOID Act."), 430 ILCS 65/1, *et seq.*

5. StoneX Group, Inc. is a Delaware corporation doing business as StoneX. StoneX is in the business of providing financial and investment products and services. Though it has offices across the United States and internationally, StoneX has leased offices - at the building owned by the Federal Reserve Bank of Chicago - at 230 South LaSalle Street, Suite 10-500, Chicago, Illinois, in Cook County.

## STATEMENT OF FACTS

6. Loss was hired by StoneX as a Quantitative Developer in late-September, 2022 and started at StoneX on November 4, 2022.

7. Loss was responsible for internal matching, futures and OTC swaps (iMatch) at StoneX. Loss worked directly under the head of the Electronic Trading and Products Development Loss developed algorithms and services for the iMatch electronic trading team, built trading applications which were used by the traders in their daily decision-making processes. His job responsibilities were partly remote and partly performed at the StoneX offices in Chicago, Illinois.

8. Loss's work performance was always of the highest quality, and received excellent performance reviews.

9. As one of the conditions of employment with StoneX, Loss was required to review the StoneX "US Employee Handbook," and sign an acknowledgement that Loss had read and understood the Handbook.

10. On or about January 11, 2024, Loss was in the middle of moving residences from the suburbs to downtown Chicago, which he was doing because of his office's location in the Loop. His personal items were generally scattered at that point in time, and he had to store his vehicle at a public parking garage near his (suburban) home while his driveway was being snowplowed. Loss normally kept his concealed carry weapon in his vehicle, but due to the car being in a public garage, Loss removed the holstered firearm and other valuable items from the vehicle and placed them in a backpack, which sat untouched in his home for six days.

11. On January 17, 2024, Loss went to work at the StoneX offices in Chicago, Illinois. The firearm - about which Loss had forgotten - was still in the backpack.

12. Loss passed through the exterior doors of his office building, into a Federal-Reserve-Police-controlled screening vestibule, as the building also housed the Federal Reserve. Because of the presence of the Federal Reserve, would-be entrants to the building had to have their belongings screened at an x-ray machine. Only if the screening is successful may a person go through the inner set of doors that leads to the lobby of the building.

13. When Loss entered the FRPD screening vestibule, and put his backpack through the Federal Reserve's x-ray machine, the guard discovered Loss's

firearm at the FRPD checkpoint, which Loss had forgotten was present in the backpack. The Federal Reserve Police pulled Loss aside, and he provided them with his valid FOID and CCL licenses. The officers then returned the licenses to Loss after running them through the Chicago Police Department's system. Loss was deeply embarrassed, but the police officers said that this actually happens all the time at that building, and that Loss just needed to store his firearm in his vehicle or return it to his home and he would be fine. The officers then returned Loss's firearm to him.

14. Loss was thus turned away before clearing screening. He went home and worked remotely the rest of the day. At no time did Loss get any further into his office building than the screening vestibule just inside the outer doors. He never passed into the building lobby proper and certainly never entered the StoneX premises on the tenth floor.

15. The Federal Reserve Police Department ("FRPD") officers had to submit an incident report as per their standard operating procedure, but assured Loss that it was not anything to worry about. The officers said they would denote Loss's intent, demeanor, valid CCL, and full compliance with the police officers.

16. StoneX Human Resources ("HR") was notified that a security incident happened. They did not obtain the report at the time Loss was interviewed, and Loss believes that HR never obtained the report at all. HR interviewed one of Loss's managers, who resides in Denver, CO, and Loss's manager pointed out that in this incident clearly everything was above-board, as the FRPD validated Loss's licenses,

returned his firearm to him, and sent him to store the firearm elsewhere. Loss interviewed with HR as well and explained to them how the entire event was very clearly an accident, as noted by the FRPD officers.

17. The next day, January 18, 2024, Loss went into the StoneX office and worked next to his boss all day without incident. However, Loss received an e-mail from HR at the end of the day that he was suspended for a week while there was an investigation into the previous day's incident.

18. StoneX's US Employee Handbook from April 2023 stated on pages 17-18, in relevant part:

> [T]he following are examples of infractions of rules of conduct that may result in disciplinary action, including suspension, demotion, or termination of employment:
>
> . . .
>
> - Carrying firearms, weapons, or dangerous substances at any time, on premises owned or occupied by the Company or during working time, unless state law provides otherwise. **Note: This prohibition applies only to the extent allowed by applicable state law.** (boldface in original)

19. StoneX's US Employee Handbook from April 2023 stated on page 49, in relevant part:

> The Company strictly prohibits employees, or any other person providing services to the Company or located on the Company's premises, from possessing weapons of any kind at the workplace. The workplace includes any property owned or leased by the Company or occupied by groups of company employees or persons providing services to the Company.

20. At all relevant times, even taking Loss's mistake into account, Loss was complying with both Illinois state law and StoneX company policy. He did not bring his firearm into his office, nor did he bring his firearm into any place that could meet the definition of "the workplace," since he did not go past the FRPD screening vestibule just inside the outer doors of the building.

21. Despite this, on February 1, 2024, Loss was terminated from his employment at StoneX for bringing a firearm into the workplace, even though he did not do that at all (specifically, he was told: "Given the recent circumstances, where a loaded handgun was discovered in Joseph's possession by Federal Reserve Police Officers at the shared entrance to StoneX's office…," which is an untrue statement). In fact, Loss complied with 430 ILCS 66/65(a)(23) [as to the Federal Reserve] and (a-10) [as to StoneX], by removing himself and his firearm from the FRPD screening vestibule before entering the building proper, and did not violate the FCCA, any other law, or StoneX policy at any time.

22. StoneX's termination of Loss's employment was in violation of Loss's exercise of his rights under the Second Amendment to the United States Constitution, Article I, Section 22 of the Illinois Constitution, and the Illinois Firearms Concealed Carry Act.

23. The Illinois Supreme Court concluded in *People v. Aguilar*, 2013 IL 112116, that "the second amendment right to keep and bear arms extends beyond the home." *Id.* at *P20. That Court went on to note that "[c]onfrontations are not limited to the home," and that "the right to have arms *** was by the time of the

founding understood to be an individual right protecting against both *public* and private violence." *Id.* (emphasis in original) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 593-94 (2008)).

24. In *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the Seventh Circuit Court of Appeals also stated that "the interest in self-protection is as great outside as inside the home." *Id.* at 941. "To confine the right to be armed to the home is to divorce the Second Amendment from the right of self-defense described in *Heller* and *McDonald* [*v. City of Chicago*, 561 U.S. 742 (2010)]." *Id.* at 937.

25. Even more recently, the United States Supreme Court held in *New York State Pistol & Rifle Ass'n v. Bruen*, 597 U.S. 1 (2022) that the people have a fundamental constitutional right to the public concealed carry of firearms for self-defense.

26. The facilitation of the exercise of the Second Amendment right to armed self-defense in public, as discussed in *Bruen*, *Moore*, and *Aguilar*, and the intention not to either destroy that right by either (A.) forcing all lawful concealed carry license-holders to either leave their concealed firearms at home, or (B.) forcing them to unload and case and render them inaccessible or disassemble them in their vehicles (pursuant to 720 ILCS 5/24-1((a)(4) or 720 ILCS 5/24-1.6(c)) prior to entering a private location that did not allow the presence of concealed firearms, or in the alternative (C.) to turn all lawful concealed carry license-holders into criminals the instant they visited a private location that did not allow the presence

of concealed firearms, is precisely the reason the General Assembly included the provisions of Section 66/65(b) in the FCCA.

27. Therefore, StoneX's termination of Loss's employment violated a clear mandate of public policy, *i.e.* that persons who are licensed by the State to exercise their fundamental right to the concealed carry of firearms in public for self-defense must be able to know that even if they almost accidentally enter a location that has prohibited the possession of concealable firearms within its physical premises – whether a private establishment or specifically-listed location, they are able to correct that error and remove the firearm from the location without negative consequences.

28. By terminating Loss for accidentally almost bringing a legally concealed carry firearm into the building, StoneX actually terminated Loss for engaging in his fundamental Second Amendment right of carrying a concealed firearm, as well as his rights under the FCCA.

29. By stating in its US Employee Handbook that its firearm "prohibition applies only to the extent allowed by applicable state law." (US Employee Handbook, April 2023, at pp. 17-18), StoneX acknowledged the law, Loss's rights under the law as a CCL-holder, and StoneX's limitations from violating those rights.

30. As a direct and proximate result of the above acts of StoneX, Loss has suffered damages, including but not limited to, lost wages and benefits, as well as future pecuniary losses.

31. The actions of StoneX against Loss have also caused him emotional and physical pain and mental suffering.

32. Loss suffered embarrassment and humiliation as a result of StoneX's unlawful conduct. Loss suffered loss of enjoyment of life, inconvenience, and other non-pecuniary losses as a direct result of StoneX's unlawful conduct.

33. Loss's career and reputation have been damaged as a result of StoneX's unlawful conduct.

34. StoneX acted with malice, willfulness, or reckless indifference to Loss's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

WHEREFORE, Plaintiff, JOSEPH J. LOSS, JR., prays that this Court enter judgment in his favor and against the Defendant, STONEX GROUP, INC., a Delaware corporation, in an amount to exceed FIFTY THOUSAND DOLLARS ($50,000.00), awarding Loss all appropriate legal and equitable relief, including, but not limited to, the value of all compensation and benefits lost as a result of the unlawful conduct, compensatory damages, punitive damages that are allowed by law, the value of all compensation and benefits he will lose in the future as a result of the unlawful conduct, damages for emotional distress, damages for mental and physical injury, reinstatement with accumulated service and/or seniority credits or front pay in *lieu* of reinstatement, pre- and post-judgment interest, reasonable attorneys' fees, and costs of suit.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: June 26, 2026

/s/ David G. Sigale
Attorney for Plaintiff

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

## VERIFICATION BY CERTIFICATION

I, Joseph J. Loss, Jr., Plaintiff in the above-referenced matter, and under penalties as provided by law, pursuant to F.R. Civ. P. 11, certify that the statements set forth in the foregoing "Verified Amended Complaint At Law" are true and correct to the best of my information and belief, including but not limited to those allegations which specifically state that they are upon information and belief.

Joseph J. Loss, Jr.

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com